IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**DIRECTV, INC.,**                                                                  **PLAINTIFF,**

**VS.**                                               **CIVIL ACTION NO. 2:03CV261-P-D**

**VALERIE HUBBARD and**
**CHRIS MCGATH,**                                                  **DEFENDANTS.**

**MEMORANDUM OPINION**

These matters come before the court upon Defendant Valerie Hubbard's Motion for Summary Judgment [79-1] and Defendant Chris McGath's Motion for Summary Judgment [81-1]. Upon due consideration of the motions and the responses filed thereto the court is prepared to rule.

**I. FACTUAL BACKGROUND**

On September 21, 2001 and November 29, 2001, DirecTV, a satellite television company, executed Writs of Seizure with the aid of local law enforcement at the mail shipping facility used by WhiteViper Technologies and DSSPro, companies DirecTV contends are major sources of pirating technology. From these raids, DirecTV obtained sales records, shipping records, email communications, and credit card receipts. Subsequently, DirecTV sued approximately 24,000 people throughout the country for allegedly pirating their satellite transmissions.

On July 20, 2003 DirecTV filed the instant action against seven Mississippi defendants for allegedly pirating DirecTV's satellite transmissions without paying for them. Ultimately, five of these defendants have been dismissed from this action, leaving Valerie Hubbard of Sardis, Mississippi and Chris McGath of Olive Branch, Mississippi. The Complaint maintains that based

1

on the records DirecTV obtained from the 2001 raids, Hubbard purchased one or more Pirate Access Devices from WhiteViper Technologies on May 15, 2000, including a "Viper Smart Card Reader/Writer." The Complaint states that McGath purchased a "WildThing 2 Clone Unlooper" on June 28, 2000 from WhiteViper.

The basic components of a DirecTV system include a DirecTV satellite dish, a receiver, and a DirecTV access card. The access card is programmed by DirecTV to contain certain access codes which determine how many of DirecTV's channels the customer can view. Without the access codes, the channel will be encrypted, or scrambled. DirecTV alleges that their satellite transmissions are commonly stolen by use of devices that manipulate the access cards into allowing all channels to be viewed without payment.

DirecTV's access card is a form of "smart card," about the size of a credit card, that contains codes. DirecTV maintains that people have been purchasing and using smart card reader/writers, such as the Viper Smart Card Reader/Writer allegedly purchased by Hubbard,[1] to manipulate the access codes on DirecTV's access cards to allow access to channels without payment. To prevent people from using the access cards rewritten with smart card reader/writers, DirecTV has sent Electronic Counter Measures (ECMs) through their satellite transmissions to render the improperly manipulated access cards inoperable. As a counter to DirectTV's counter measures, people have used "unloopers," another form of a smart card reader/writer, to once again rewrite the access cards to allow use of DirecTV's channels without payment.

DirecTV avers that smart card reader/writers and unloopers have no legitimate use.

---

[1] Though not stated in the complaint, McGath admits to purchasing a smart card reader/writer in addition to the unlooper specifically mentioned in the complaint.

2

However, other than the mere assertion, they do not provide evidence to support this assertion. Indeed, DirectTV's access cards are not the only type of smart cards that can be read or written by smart card readers. As a matter of illustration, smart cards are like the memory cards commonly used in digital cameras. One takes pictures with the camera and the images are stored on the memory cards. The memory card can be taken out and placed in a memory card reader either built into one's computer or one purchased later and connected to the computer usually via a universal serial bus (USB) cable. The device is a "reader" because it tells your computer or camera what is in the card. The device is a "writer" because the camera writes the images on the card. Smart cards are like the memory cards and smart card reader/writers are like memory card reader/writers. The smart card reader/writer simply reads what is on the card and can rewrite what is on the card if desired. In general, smart cards can be used for a wide range of applications such as keys to get inside buildings or to store one's passwords. Another example of a reader/writer is a CD or DVD reader/writer – usually standard equipment on current personal computers.

Importantly, DirecTV has admitted in other identical cases through their Director of Signal Integrity, Larry Rissler, that in order to successfully pirate DirecTV signals, a person must have a DirecTV satellite dish, a DirecTV receiver, a DirectTV Access Card, a smart card reader/writer, an unlooper, as well as the appropriate computer software and the actual access codes. See Dep. of Larry Rissler, p. 96 from *DirecTV v. Karpinsky*, 2:02cv73929-GCS (E.D. Mich.) attached as Exhibit A to Hubbard's Motion for Summary Judgment and Exhibit C to McGath's Motion for Summary Judgment.

Count 1 of the instant Complaint posits that the defendants are liable for the unauthorized

3

reception of satellite signals under the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), because they have received and/or assisted others in receiving DirecTV's satellite transmissions without paying for them by using pirate access devices. Count 2 argues liability under the Electronic Communications Act, 18 U.S.C. § 2511(1)(A), by the defendants' use of pirate access devices to decrypt and view DirecTV's satellite transmissions, thereby intentionally intercepting, endeavoring to intercept, or procuring other people to intercept, DirecTV's satellite transmissions without paying for them. Count 3 asserts liability for theft of telecommunications services in violation of Mississippi Code Annotated § 97-25-54(2)(a) by the defendants' possession and/or use of pirate access devices. Count 4 urges liability for possession of pirate access devices in violation of Mississippi Code Annotated § 97025054(3)(b). Count 5 sought liability for possession of pirate access devices in violation of 18 U.S.C. § 2512(1)(a); however, said claim was dismissed pursuant to an agreed order entered August 3, 2004. Finally, Count 6 maintains that the defendants are liable under Mississippi's common law tort of conversion because "by importing, possessing, and using Pirate Access Devices, Defendants have unlawfully converted to their own use and benefit property belonging to DirecTV."

The relief DirecTV seeks includes an injunction enjoining the defendants from importing, possessing, or using pirate access devices to steal DirecTV satellite transmissions, an order requiring the defendants to surrender the pirate access devices, and damages in the form of either statutory or compensatory and punitive damages, as well as attorney fees.

Both of the remaining defendants, Hubbard and McGath, have filed the instant motions for summary judgment. In these motions the defendants essentially argue that even if they did possess the devices as alleged, which is not a given, mere possession of these devices without

4

proof of actual interception of the satellite transmissions is not enough to warrant liability. They maintain that there is nothing inherently illegal about a smart card reader/writer or an unlooper.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion

for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5 Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5 Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5 Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

**B. Unauthorized Interception under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(A)**

As stated above, DirecTV admits that not only must one have a smart card, a smart card reader/writer, and an unlooper to pirate DirecTV satellite signals, one must also possess the proper software and access codes to effectively rewrite DirecTV access cards to steal DirecTV channels. It is undisputed that DirecTV has no evidence that either Hubbard or McGath possessed the access codes or software. In fact, DirecTV never alleged they did. Rather, DirecTV seeks to hold the defendants liable under 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a) for merely alleging that they possessed a smart card reader/writer and/or smart card unlooper. As has been very recently held by the Fifth Circuit Court of Appeals, this is not enough to prove liability under § 605(a) or § 2511(1)(a). *DirecTV v. Robson*, — F.3d –, 2005 WL 1870775, *4 (5th Cir. (La.) August 9, 2005) ("[T]here is conspicuously no civil action for merely possessing or purchasing a pirate access device. Neither § 605(a) nor § 2511(1)(a) is violated by such conduct.").

**C. State Law Claims**

Thus remains DirecTV's claims of theft of telecommunication services in violation of Mississippi Code Annotated § 97-25-54(2)(a), possession of a pirate access device in violation of Mississippi Code Annotated § 97-25-54(3)(b), and conversion. Of course, Mississippi Code Annotated § 97-25-54 is a criminal statute. However, subsection (10) provides in pertinent part:

> A telecommunication service provider aggrieved by a violation of this section may, in a civil action in any court of competent jurisdiction, obtain appropriate relief, including preliminary and other equitable or declaratory relief, compensatory and punitive damages, reasonable investigation expenses, costs of court and attorney fees.

Miss. Code Ann. § 97-25-54(10).

For the same reasons that DirecTV's federal claims could not survive summary judgment, its claims that the defendants are liable for theft of telecommunication in violation of § 97-25-54(2)(a) and common-law conversion must fail. Assuming *arguendo* that Hubbard and McGath possessed a smart card reader/writer and/or an unlooper, mere possession of those devices without more does not prove that they used them to actually steal DirecTV channels. This is especially true since there is no evidence that either defendant had the requisite software or access codes to effectively rewrite the access cards and since DirecTV has not established that there is something inherently illegal about smart card reader/writers or unloopers.

Incidentally, the court disagrees with the defendants that § 97-25-54 is void as unconstitutionally vague. The statute is not vague; rather, it clearly makes it a crime to modify *inter alia* satellite television equipment to steal satellite television channels.

Furthermore, even if DirecTV had produced sufficient evidence to establish conversion, it appears that the Mississippi common-law tort of conversion does not apply to satellite transmissions. "Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *First Investors Corp. v. Rayner*, 738 So.2d 228, 234 (Miss. 1999). "The reported cases in Mississippi reflect the view that an action for conversion is available for wrongful interference with tangible items of personal property and those 'intangible rights that are customarily merged in, or identified with some document.'" 5 Jeffrey Jackson and Mary Miller, Mississippi Practice Series Encyclopedia of Missisippi Law § 41:88 (2001) (citing Keeton, et al., Prosser and Keeton on the Law of Torts, § 15, at 92 (5th ed. 1984)). According to the Oxford English Dictionary, "tangible" means "Capable of being touched; affecting the sense of touch; touchable." Satellite transmissions are not "tangible" in the sense that they can be

8

perceived by the touch of the skin. Therefore, it appears that logic would dictate that even if DirecTV could prove the defendants unlawfully intercepted their satellite transmissions, this would not give rise to the tort of conversion.

This leaves DirecTV's claim that the defendants are liable under § 97-25-54(3)(b) which provides in pertinent part:

> Any person who possesses a telecommunication device ... intending to avoid the payment of any lawful charge for service to the device ... or modifies, alters, programs, or reprograms a telecommunication device designed, adapted or which can be used for commission of a theft of telecommunication service or to acquire or facilitate the acquisition of telecommunication service without the consent of the telecommunication service provider ... is guilty of a misdemeanor ....

As concluded above, DirecTV has not established that any of the devices allegedly or admittedly purchased by the defendants are inherently illegal and can only be used for unlawful interception of its satellite transmissions. Nor has DirecTV established that either of the defendants actually used, altered, modified, programmed, or reprogrammed the subject devices "to avoid payment of any lawful charge for service to the device" under § 97-25-54(3)(b).

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant Valerie Hubbard's Motion for Summary Judgment [79-1] and Defendant Chris McGath's Motion for Summary Judgment [81-1] should be granted and that the plaintiff's claims should be dismissed with prejudice. Accordingly, an Order shall issue forthwith,

**THIS DAY** of August 17, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE